UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| EMMANUEL WARE,              ) | |
|                             ) | |
|     **Plaintiff,**     ) | |
|                             ) | |
| vs.                         ) | Case No. 3:21-cv-00593-GCS |
|                             ) | |
| JOSHUA SLUNAKER,            ) | |
| MATT BOSECKER,              ) | |
| LANCE WISE and              ) | |
| CHRIS GIPSON,               ) | |
|                             ) | |
|     **Defendants.**   ) | |

## MEMORANDUM & ORDER

**SISON, Magistrate Judge:**

### INTRODUCTION AND BACKGROUND

Plaintiff Emanuel Ware, an inmate of the Illinois Department of Corrections ("IDOC") currently detained at Robinson Correctional Center ("Robinson"), brings this civil rights action pursuant to 42 U.S.C. § 1983 for alleged deprivations of his constitutional rights while housed at Lawrence Correctional Center ("Lawrence"). (Doc. 1). Plaintiff claims that he was subject to cruel and unusual punishment and humiliation when he was left in a cell without access to a bathroom for multiple hours, and his rights were violated because prison mental health professionals did not respond promptly to his declaration of a crisis as is required by prison policy. He seeks declaratory, compensatory, and punitive damages.

The case is now before the Court on a motion for summary judgment filed by Defendants Matt Bosecker, Chris Gipson, Joshua Slunaker, and Lance Wise. (Doc. 51, 52).[1] Plaintiff filed an opposition. (Doc. 56).

On June 1, 2021, Plaintiff filed his Complaint. (Doc. 1). Plaintiff alleges that on May 19, 2020, Defendant Slunaker came to his cell and told him to pack his property for a move to cell R4C. (Doc. 1, p. 2). Plaintiff alleges that he immediately told Defendant Slunaker that he wanted to speak to Defendant Bosecker about the move because he had issues with a correctional officer in the proposed housing location. Plaintiff apparently spoke to Defendant Bosecker, who he believes also consulted with Defendant Wise. Plaintiff was told nothing could be done. Plaintiff then told Defendant Slunaker that he wanted a crisis team, though he told Defendant Slunaker he was not going to harm himself. Defendant Slunaker restrained Plaintiff and locked him in a shower cell around 10 am.

Plaintiff alleges that while locked in the cell he attempted to relay a message via other inmates in neighboring areas to Defendants Wise, Bosecker, Slunaker, and John Doe that he needed to use the restroom. Defendants allegedly ignored multiple requests. Eventually when Defendant Slunaker came to the wing, Plaintiff begged to use the bathroom, but Defendant Slunaker denied his request. Plaintiff alleges that he was forced to defecate on himself. Between 12-12:30 pm, Plaintiff alleges that Defendant Heart came

---

[1] Defendants also filed the required Federal Rule of Civil Procedure 56 notice informing Plaintiff of the consequences of failing to respond to the motion for summary judgment and what is required in responding to the motion for summary judgment. (Doc. 53).

to talk to him about his request for a crisis team. Sometime thereafter, Defendant Slunaker gave him two red biohazard bags for his soiled clothes and boots, and he allowed Plaintiff to wash up.

Plaintiff alleges that Defendants Slunaker, Wise, Bosecker, and John Doe violated his rights by being deliberately indifferent to his need to access a bathroom. He alleges that Defendant Boose, as the mental health administrator, violated his rights by failing to respond to his declaration of a crisis within 2 hours, as is required by "ID 04.04.102". (Doc. 1, p. 5). He further alleges that Defendant Boose's conduct violated the Eighth Amendment by causing him pain, suffering, and emotional distress. He makes the same allegations against Defendant Heart.

On March 22, 2022, the Court conducted the required review of Plaintiff's complaint pursuant to 28 U.S.C. § 1915A. (Doc. 7). The Screening Order allowed Plaintiff to proceed with one Count against Defendants Slunaker, Bosecker, Wise, and John Doe for restraining Plaintiff in a shower stall with no access to a bathroom. However, the Court dismissed without prejudice the Eighth Amendment claim against Defendants Boose and Heart for failing to respond to Plaintiff's declared crisis within 2 hours, as required by ID 04.04.102. (Doc. 7, p. 4). Thereafter, the Court granted Plaintiff leave to file an Amended Complaint and a motion to substitute, which served the purpose of identifying the John Doe defendant as Christopher Gipson. (Doc. 34). The Amended Complaint was filed the next day on December 1, 2022. (Doc. 35).

Defendants contend that they are entitled to summary judgment as Plaintiff cannot establish the conditions of confinement were sufficient to establish a constitutional

violation. Further, Defendants argue that Plaintiff does not have sufficient evidence to establish Defendant Wise was personally involved in the alleged deprivation of his constitutional right. Furthermore, Defendants are entitled to qualified immunity on Plaintiff's claims. Plaintiff counters that Defendants are not entitled to qualified immunity and that he "was not allowed the toilet for over 2 hours as it was brought to defendants [sic] attention that he needed to use the toilet. Not only did defendants deny access to the toilet they proceeded to laugh at plaintiff." (Doc. 56, p. 7).

## UNDISPUTED MATERIAL FACTS

The following facts are taken from the record and presented in the light most favorable to Plaintiff, the non-moving party, and all reasonable inferences are drawn in his favor. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

On or about May 19, 2020, Plaintiff was incarcerated at Lawrence. Defendant Joshua Slunaker was employed as a correctional officer at Lawrence; Defendant Matt Bosecker was employed as a correctional sergeant at Lawrence; Defendant Lance Wise was employed as a correctional lieutenant at Lawrence; and Defendant Chris Gipson was employed as a correctional officer at Lawrence Correctional Center.

That day, Defendant Slunaker came to Plaintiff's cell and informed him he was moving to a different cellhouse. (Doc. 52-1, p. 29-30). Plaintiff informed Defendant Slunaker that he did not want to be moved to the new cellhouse and asked to speak to a lieutenant. Defendant Wise responded to Plaintiff's cell approximately 15-20 minutes later, and Plaintiff informed Defendant Wise that he did not want to be moved to the new

cellhouse. Plaintiff stated that he wanted a crisis team and was told by Defendant Wise that the officers would call for the crisis team to respond. *Id.* at p. 30.

Thereafter, Defendants Bosecker and Slunaker arrived on the wing and Defendant Slunaker told Plaintiff to turn around and "cuff up," to which Plaintiff complied. (Doc. 52-1, p. 30). Defendant Slunaker applied mechanical restraints to Plaintiff's arms behind his back. *Id.* Plaintiff was placed in the secure shower on the wing to await the arrival of the crisis team. *Id.* at p. 30-31.

After about 30-40 minutes of being in the shower, Plaintiff felt the need to use the bathroom. Plaintiff asked other individuals in custody to inform the officers in the bubble that he needed to use the bathroom. During this time, Defendant Slunaker came on the wing a couple of times. Plaintiff told Defendant Slunaker that he needed to use the bathroom. Defendant Slunaker informed Plaintiff that he could not release him from the shower until the crisis team had responded because Plaintiff had requested the team. (Doc. 52-1, p. 31-32). Also, during this time, Defendant Bosecker came on the wing, and Plaintiff begged and pleaded with Defendant Bosecker to let him use the bathroom, but Defendant Bosecker also told Plaintiff he could not release him from the secure shower until the crisis team responded. Defendant Bosecker also told Plaintiff he would call the crisis team again to see if he could expedite their response. *Id.* at p. 32. While Plaintiff was in the secure shower, Defendant Gipson stepped on the wing briefly "for like a second or two and walked back off." Plaintiff called Defendant Gipson's name, but Defendant Gipson did not acknowledge Plaintiff. *Id.* at p. 53-54.

Plaintiff did not speak to or see Defendant Wise after he was placed in the secure shower. (Doc. 52-1, p. 35).[2] After about 1.5 hours, Plaintiff defecated on himself. *Id.* at p. 32. Plaintiff was held in the shower for approximately 2.5 hours before the crisis team arrived to assess him. *Id.* at p. 33. After Plaintiff was assessed by the crisis team, Plaintiff cleaned himself up in the shower and changed clothes. *Id.* at p. 54-55.

Darren Williams, Correctional Major and Shift Commander at Lawrence, submitted a declaration regarding the Administrative Directives of the IDOC and Lawrence. He averred that if an individual in custody declares a crisis or asks for a crisis team, staff members are to place the individual in mechanical restraints and place them in a secure location, typically the secured shower; the crisis team must also be contacted. The individual is held in restraints in the secure location until they are assessed by the crisis team to ensure their own safety, as well as the safety and security of the institution. (Doc. 52-2).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 governs motions for summary judgment. Summary judgment is appropriate if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See Archdiocese of Milwaukee v. Doe*, 743 F.3d 1101, 1105 (7th Cir. 2014) (citing FED. R. CIV.

---

[2] Plaintiff testified: "Wise was long gone before I even was placed in the shower. He was -- around the time I was getting placed in the shower, that's when he was walking out of the building." (Doc. 52-1, p. 3).

PROC. 56(a)). *Accord Anderson v. Donahoe*, 699 F.3d 989, 994 (7th Cir. 2012). A genuine issue of material fact remains "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). *Accord Bunn v. Khoury Enterprises, Inc.*, 753 F.3d 676, 681-682 (7th Cir. 2014).

In assessing a summary judgment motion, the district court views the facts in the light most favorable to, and draws all reasonable inferences in favor of, the non-moving party. *See Anderson*, 699 F.3d at 994; *Delapaz v. Richardson*, 634 F.3d 895, 899 (7th Cir. 2011). As the Seventh Circuit has explained, and as required by Rule 56(a), "we set forth the facts by examining the evidence in the light reasonably most favorable to the non-moving party, giving [him] the benefit of reasonable, favorable inferences and resolving conflicts in the evidence in [his] favor." *Spaine v. Community Contacts, Inc.*, 756 F.3d 542, 544 (7th Cir. 2014).

## DISCUSSION

The Eighth Amendment imposes liability on prison officials who act with deliberate indifference to a substantial risk of serious harm to inmates. *See Eagan v. Dempsey*, 987 F.3d 667, 693 (7th Cir. 2021). The deliberate indifference standard encompasses both objective and subjective elements, "each of which must be satisfied." *Johnson v. Prentice*, 29 F.4th 895, 904 (7th Cir. 2022) (quoting *Quinn v. Wexford Health Sources, Inc.*, 8 F.4th 557, 565 (7th Cir. 2021)). The objective element requires Plaintiff to establish that he faced "sufficiently serious" conditions, meaning that Defendants denied him "the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th

Cir. 2019) (internal quotation marks and citation omitted). To meet the subjective element, Plaintiff must demonstrate that Defendants exhibited "more than mere or gross negligence, but less than purposeful infliction of harm." *Quinn*, 8 F.4th at 566 (quoting *Lisle v. Welborn*, 933 F.3d 705, 717 (7th Cir. 2019)).

Here, the Court finds that Plaintiff has failed to establish that he suffered a sufficiently serious constitutional deprivation, which must be "extreme" to be actionable. *See Delaney v. DeTella,* 256 F.3d 679, 682–683 (7th Cir. 2001). The Constitution does not require that prisoners be comfortable. *Id.* Conditions of confinement that do not fall below contemporary standards of decency are constitutional. *See Thomas v. Ramos,* 130 F.3d 754, 763 (7th Cir. 1997). In this case, Plaintiff spent 2.5 hours in the shower before the crisis team arrived, and he was deprived the use of the bathroom for 1.5 hours before he defecated on himself. While this was not an ideal situation by any means, it was temporary, and as the law makes clear, it was not of sufficient severity to implicate the Eighth Amendment. *See, e.g.*, *Harris v. Jones*, No. 20-1625, 2021 WL 4950248, at *2 (7th Cir. Oct. 25, 2021) (noting that temporary lack of toilet access is not cruel and unusual punishment); *Cunningham v. Eyman*, No. 00-2648, 17 Fed. Appx. 449, 454 (7th Cir. Aug. 17, 2001) (indicating that inmate failed to establish an Eighth Amendment claim when he alleged he urinated and defecated on himself and was forced to remain in his soiled clothes for four to five hours because the officers refused to remove his restraints so he could use the toilet.); *Dixon v. Godinez,* 114 F.3d 640, 643 (7th Cir. 1997) (indicating that duration of deprivation must be considered in determining whether condition of confinement is unconstitutional); *Antonelli v. Sheahan,* 81 F.3d 1422, 1431 (7th Cir.

1996) (same); *Harris v. Fleming,* 839 F.2d 1232, 1235 (7th Cir. 1988) (noting that temporary neglect of prisoner's hygienic needs was insufficient to establish an Eighth Amendment violation); *Thomas v. McCoy,* No. 17 C 6386, 2020 WL 247464, at *6 (N.D. Ill. Jan. 16, 2020) (acknowledging "that the lack of access to toilet facilities for a short period of time may not be sufficiently serious to state a claim of constitutional dimension, particularly if access is denied due to valid penological concerns."). *Accord Key v. McKinney,* 176 F.3d 1083, 1086 (8th Cir. 1999) (noting that prisoner who was restrained in handcuffs and shackles for 24 hours, making it more difficult for him to relieve himself, did not suffer a constitutional violation); *Perry v. JPAY, Inc.,* No. 7:16-cv-00362, 2018 WL 1309743, at *8 (W.D. Va. Mar. 13, 2018) (stating that "[t]emporary restrictions on bathroom use, even ones lasting hours, do not constitute the wanton infliction of pain or exhibit deliberate indifference to a prisoner's health or safety.") (quoting *Watson v. Graves*, No. 1:15cv1214 (LMB/TCB), 2017 WL 4533103, at *5 (E.D. Va. Oct. 6, 2017)).

Additionally, though the Defendants' conduct of laughing at Plaintiff, if true, is shameful, it does not violate the Constitution. Because Plaintiff does not assert facts demonstrating that he suffered a deprivation of constitutional proportions, the Court does not need to consider whether the Defendants acted with a culpable mental state, *i.e.,* whether they acted with deliberate indifference to a known risk to Plaintiff's health or safety. The Court need not address Defendants' remaining arguments. Accordingly, the Court **GRANTS** the motion for summary judgment.

CONCLUSION

Accordingly, the Court **GRANTS** the motion for summary judgment (Doc. 51). The Court **FINDS** in favor of Defendants Matt Bosecker, Chris Gipson, Joshua Slunaker, and Lance Wise and against Plaintiff Emmanuel Ware. The Court **DIRECTS** the Clerk of the Court to enter judgment reflecting the same and to close the case.

In an abundance of caution, and noting Plaintiff's *pro se* status, the Court advises Plaintiff as follows. Plaintiff has two means of contesting this order: (1) he may request this Court review this order; or (2) he may appeal the order to the Seventh Circuit Court of Appeals.

If Plaintiff chooses to request this Court to review this order, he should file a motion to alter or amend the judgment under Federal Rule of Civil Procedure 59(e). Plaintiff *must* file the motion within twenty-eight (28) days of the entry of judgment; the deadline *cannot* be extended. *See* FED. R. CIV. PROC. 59(e); 6(b)(2). The motion must also comply with Rule 7(b)(1) and state with sufficient particularity the reason(s) that the Court should reconsider the judgment. *See Elustra v. Mineo*, 595 F.3d 699, 707 (7th Cir. 2010); *Talano v. Northwestern Medical Faculty Foundation, Inc.*, 273 F.3d 757, 760 (7th Cir. 2001). *See also Blue v. Hartford Life & Acc. Ins. Co.*, 698 F.3d 587, 598 (7th Cir. 2012) (stating that a party must establish either manifest error of law or fact, or that newly discovered evidence precluded entry of judgment to prevail on a Rule 59(e) motion) (citation and internal quotation marks omitted).

So long as the Rule 59(e) motion is in proper form and timely submitted, the 30-day clock for filing a notice of appeal will be tolled. *See* FED. R. APP. PROC. 4(a)(4). The clock will start anew once the undersigned rules on the Rule 59(e) motion. *See* FED. R. APP. PROC. 4(a)(1)(A), (a)(4), (a)(4)(B)(ii). However, if the Rule 59(e) motion is filed outside the 28-day deadline or "completely devoid of substance," the motion will not toll the time for filing a notice of appeal; it will expire 30 days from the entry of judgment. *Carlson v. CSX Transportation, Inc.*, 758 F.3d 819, 826 (7th Cir. 2014); *Martinez v. Trainor,* 556 F.2d 818, 819–820 (7th Cir. 1977). Again, this deadline can be extended only on a written motion by Plaintiff showing excusable neglect or good cause.

In contrast, if Plaintiff chooses to go straight to the Seventh Circuit, he must file a notice of appeal from the entry of judgment or order appealed from *within 30 days. See* FED. R. APP. PROC. 4(a)(1)(A) (emphasis added). The deadline can be extended for a short time only if Plaintiff files a motion showing excusable neglect or good cause for missing the deadline and asking for an extension of time. *See* FED. R. APP. PROC. 4(a)(5)(A), (C). *See also Sherman v. Quinn*, 668 F.3d 421, 424 (7th Cir. 2012) (explaining the good cause and excusable neglect standards); *Abuelyaman v. Illinois State University*, 667 F.3d 800, 807 (7th Cir. 2011) (explaining the excusable neglect standard).

Plaintiff may appeal to the Seventh Circuit by filing a notice of appeal in this Court. *See* FED. R. APP. PROC. 3(a). The current cost of filing an appeal with the Seventh Circuit is $605.00. The filing fee is due at the time the notice of appeal is filed. *See* FED. R. APP. PROC. 3(e). If Plaintiff cannot afford to pay the entire filing fee up front, he must file a motion for leave to appeal *in forma pauperis* ("IFP motion"). *See* FED. R. APP. PROC. 24(a)(1).

The IFP motion must set forth the issues Plaintiff plans to present on appeal. *See* FED. R. APP. PROC. 24(a)(1)(C). If Plaintiff is allowed to proceed *in forma pauperis* on appeal, he will be assessed an initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1). He will then be required to make monthly payments until the entire filing fee is paid. *See* 28 U.S.C. § 1915(b)(2).

**IT IS SO ORDERED.**

**DATED:  April 24, 2024.**

Digitally signed by Judge Sison
Date: 2024.04.24 12:38:33 -05'00'

**GILBERT C. SISON**
**United States Magistrate Judge**